Alden J. Parker (SBN 196808)
E-Mail: aparker@fisherphillips.com
Christopher S. Alvarez (SBN 294795)
E-Mail: calvarez@fisherphillips.com
William T. Okamoto (SBN 342147)
E-Mail: wokamoto@fisherphillips.com
FISHER & PHILLIPS LLP
621 Capitol Mall, Suite 1400
Sacramento, California 95814
Telephone: (916) 210-0400
Facsimile: (916) 210-0401

Attorneys for Defendant
9W HALO WESTERN OPCO L.P.
dba ANGELICA ERRONEOUSLY SUED AS
9W HALO WESTERN OPCO, L.P.
dba ANGELICA TEXTILE SERVICES

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAQAS N. BUTT, individually and on behalf of himself and all others similarly situated,,<br><br>Plaintiff,<br><br>v.<br><br>9W HALO WESTERN OPCO, L.P., a Delaware limited liability company doing business as ANGELICA TEXTILE SERVICES; and DOES 1-50, inclusive,<br><br>Defendants. | Case No:<br><br>*[Originally Sacramento County Superior Court Case No. 34-2022-00320489-CU-OE-GDS]*<br><br>**DEFENDANT 9W HALO WESTERN OPCO L.P. DBA ANGELICA ERRONEOUSLY SUED AS 9W HALO WESTERN OPCO, L.P. DBA ANGELICA TEXTILE SERVICES' NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**<br><br>Complaint Filed: May 24, 2022 |

DEFENDANT 9W HALO WESTERN OPCO L.P. DBA ANGELICA ERRONEOUSLY SUED AS 9W HALO WESTERN OPCO, L.P. DBA ANGELICA TEXTILE SERVICES' NOTICE OF REMOVAL OF ACTION, ET AL.

FP 44871469.2

TO PLAINTIFF AND HIS COUNSEL OF RECORD AND TO THE CLERK FOR THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA:

1. PLEASE TAKE NOTICE that Defendant 9W Halo Western OpCo L.P. doing business as Angelica, erroneously sued as 9W Halo Western OpCo L.P. doing business as Angelica Textile Services, ("Defendant," the "Company", or "Angelica") through its counsel of record, submits this petition for removal of this case from the Superior Court of the State of California, County of Sacramento, to the United States District Court for the Eastern District of California pursuant to 28 U.S.C. §§ 1332(d) (the "Class Action Fairness Act" hereinafter "CAFA"), 1441, 1446, and 1453. The grounds for removal are as follows:

## I. THE STATE COURT ACTION

2. On or about May 24, 2022, Plaintiff Waqas N. Butt filed an unverified Class Action Complaint ("Complaint") in the Superior Court of the State of California, in and for the County of Sacramento, thereby initiating the civil action entitled "*WAQAS N. BUTT, individually and on behalf of himself and all others similarly situated, Plaintiff, v. 9W HALO WESTERN OPCO, L.P., a Delaware limited liability company, doing business as ANGELICA TEXTILE SERVICES; and DOES 1-50, inclusive, Defendants*," Case No. 34-2022-00320489 (hereafter, the "State Court Action"). A true and correct copy of the complaint is attached as **Exhibit A** to the Declaration of William Okamoto ("Decl. Okamoto").

3. The County of Sacramento is within the territory of the United States District Court for the Eastern District of California.

4. Plaintiff's Complaint asserts causes of action for: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Owed; (3) Failure to Provide Lawful Meal Periods; (4) Failure to Authorize and Permit Rest Periods; (5) Failure to Timely pay Wages During Employment; (6) Failure to Timely Pay Wages Owed Upon Separation From Employment; (7) Failure to Reimburse Necessary Expenses; (8) Knowing and Intentional Failure to Comply with Itemized Wage Statement Provisions; and (9) Violation of Unfair Competition Law. *See* Decl. Okamoto, **Exh. A**.

///

///

5.     This case is brought by Plaintiff as a class action. Specifically, Plaintiff seek to represent "all persons who are or were employed by the Defendants as hourly paid, non-exempt employees in the State of California at any time from four years prior to the filing of this action through resolution or trial of the matter." Decl. Okamoto, **Exh. A**, at ¶ 49. Plaintiff similarly seeks to represent nine subclasses of individuals: minimum wage subclass, overtime subclass, first meal period subclass, second meal period subclass, rest period subclass, indemnification subclass, waiting time subclass, inaccurate wage statements subclass, unfair business practices subclass. *Id.* ¶ 50.

6.     The Complaint was served on the Company on or about July 14, 2022. (Decl. Okamoto ¶ 3.)

7.     DOES 1 through 50, inclusive, have not been identified, and there is no record or indication that any Doe defendants have been served with the Summons or the Complaint in the State Court Action.

8.     On August 15, 2022, Defendant submitted for filing, an Answer in the State Court Action. A true and correct copy of Defendant's responsive pleading is attached as **Exhibit G** to the Decl. Okamoto.

9.     Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all other process, pleadings, and orders served on Defendant are attached as **Exhibit A** (Complaint), **Exhibit B** (Summons), **Exhibit C** (Civil Case Cover Sheet), **Exhibit D** (Proof of Service of Summons) **Exhibit E** (Notice of Hearing for Complex Determination Hearing and Case Management Conference), and **Exhibit F** (Notice of Hearing for Complex Determination Hearing) to the Decl. Okamoto.

10.    No further pleadings have been filed and no further proceedings related thereto have been heard in Superior Court. (Decl. Okamoto ¶ 6.)

11.    Defendant is and was, at all times during the Class Period, a provider of healthcare linen and medical laundry services.

## II.   REMOVAL IS SUBJECT TO A LIBERAL PLEADING STANDARD.

12.    In 2014, the U.S. Supreme Court held that notices of removal are subject to the same general pleading standards applicable to complaints pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, and that accordingly such notices need not attach evidence or meet a burden of proof, but

rather need only contain a "short and plain statement of the grounds for removal." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (quoting 28 U.S.C. § 1446(a)). This governing principle also applies to a removing party's allegations as to the amount in controversy. *See id.* at 87-89; *Garnett v. ADT LLC*, 74 F. Supp. 3d 1332, 1334 (E.D. Cal. 2015). Only if the Court, or another party, contests the allegations of removability must the removing party submit evidence supporting its allegations, whereupon removability is decided under a preponderance of evidence standard. *See Dart Cherokee*, 574 U.S. at 88-89.

13. There is no "presumption against removal" when defendant seeks to remove pursuant to the CAFA. *See Dart Cherokee*, 574 U.S. at 89.

## III. THE PROCEDURAL REQUIREMENTS OF 28 U.S.C. § 1446 ARE SATISFIED.

### A. <u>Venue</u>

14. In accordance with 28 U.S.C. section 1446(a), this Notice is filed with the District Court of the United States in which the Action is pending. The Superior Court of California, County of Sacramento is located within the Eastern District of California. *See* U.S.C. § 84(b). Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." *See* 28 U.S.C. §1441(a). Thus, this Court is the proper district court to which this case may be removed. *See* 28 U.S.C. §§ 1441(a) and 1446(a).

### B. <u>Timeliness</u>

15. Defendant was served with the Summons and Complaint on or about July 14, 2022. (Decl. Okamoto ¶ 3.). This removal is timely filed as required by 28 U.S.C. section 1446(b) because it has been filed within thirty (30) days of the date of first service of the State Court Action on Defendant and within one year of the date the State Court Action was filed.

### C. <u>Service and Filing of Notice</u>

16. In accordance with 28 U.S.C. § 1446(d), Defendant is serving a copy of this Notice upon counsel for Plaintiff, and Defendant will file copies of this Notice with the Clerk of the Superior Court of California in the County of Sacramento and with the Clerk of the Eastern District of California. Defendant will promptly file true and correct copies of the Proof of Service regarding the Notice of Removal to Plaintiff and the state court.

## IV. THE U.S. DISTRICT COURT HAS JURIDICTION PURSUANT TO THE CLASS ACTON FAIRNESS ACT.

17. On February 18, 2005, Congress enacted the Class Action Fairness Act of 2005. CAFA gives U.S. District Courts original jurisdiction over civil class action lawsuits in which any member of the putative class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446. While there are a number of exceptions to this rule of original jurisdiction contained in 28 U.S.C. §§ 1332(d)(3)-(5), no such exceptions apply here.

18. This Court has original jurisdiction of this action under CAFA. As set forth below, this action is removable pursuant to 28 U.S.C. § 1441(a) as it is (1) the proposed class exceeds 100 members, (2) a putative class action in which at least one member of the class of plaintiff is a citizen of a state different from that of any one defendant, and (3) the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Further, no defendant identified in the Complaint is a state, officer of a state, or a governmental agency. 28 U.S.C. § 1332(d)(5).

### A. The Numerosity of Class Members Requirement is Satisfied.

19. CAFA's requirement that proposed class membership be no less than 100 is satisfied here because the putative class has more than 100 members. See 28 U.S.C. § 1332(d)(5)(B). Specifically, Plaintiff's Complaint asserts that he is bringing this action on behalf of himself, and all other similarly situated employees, including both exempt and non-exempt former and current employees. Decl. Okamoto, **Exh. A**, at ¶ 1.

20. The Class Period is defined as the time period of May 24, 2018, through judgement of this matter. Cal. Civ. Proc. Code § 338 (West 2022) (noting that the relevant class year is three years); Cal. Bus. & Prof. Code § 17208 (West 2022) (noting that a claim for unfair business practices adds an additional year to class claims).

21. Plaintiff was an hourly non-exempt flatwork employee who worked for Angelica from on or about September 9, 2015, to on or about June 3, 2021. It is beyond dispute that there are more than one hundred (100) hourly non-exempt employees and more than one hundred (100) non-exempt

employees, which are effectively the number of members of all proposed plaintiff classes. Indeed, there are more than 2,000 punitive class members encompassed in the Class Period. *See* Declaration of Gennea Moore ("Decl. Moore") ¶ 4. As such, the CAFA's exception for classes of fewer than one hundred (100) persons does not apply and the numerosity requirement is satisfied. See 28 U.S.C. § 1332(d)(5)(B).

## B. Complete Diversity Exists Between Plaintiff and Defendant.

22. Under 28 U.S.C. § 1453(b), which is a part of the CAFA, "[a] class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(c)(1) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants." The CAFA requires only minimal diversity. The CAFA's diversity requirement is satisfied when at least one plaintiff is a citizen of a state in which none of the defendants are citizens, when one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen, or when one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a).

### 1. *Plaintiff Is Domiciled in the State of California.*

23. Plaintiff was, at the time of the filing of the Complaint, and remains as of the filing of this Notice of Removal, a resident and citizen of the State of California. *See e.g.,* Decl. Okamoto, **Exh. A**, at ¶ 14. As Plaintiff admits in his allegations, he is a resident of the State of California, at all relevant times in his Complaint. *Id.* Natural persons are domiciled in the places they reside with the intent to remain or to which they intend to return. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). An existing domicile is presumed to continue. *See McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 288 (3d Cir. 2006); *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48 (1st Cir. 1992). Therefore, "domicile once acquired is presumed to continue until it is shown to have been changed." *Mitchell v. United States,* 88 U.S. 350, 353 (1875). Plaintiff is therefore a citizen of the State of California. *See* 28 U.S.C. § 1332(a)(1).

24. Moreover, the putative class purports to include current employees located in California as well. Decl. Okamoto, **Exh. A**, at ¶ 17. Nothing in the Complaint suggest otherwise. Accordingly, Plaintiff is domiciled in and is a citizen of the State of California.

### 2. *Defendant Is Diverse from Plaintiff's Domicile.*

25. For purposes of diversity under the CAFA, an unincorporated association is deemed to be a citizen of the state where it has its principal place of business and the state under whose laws it is organized. 28 U.S.C. § 1332(d)(10). An "unincorporated association" includes all noncorporate business entities, such as limited partnerships. *Cf. Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 702, 704-05 (4th Cir. 2010). The phrase "principal place of business" refers to the place where the entity's high-level officers direct, control, and coordinate the entity's activities. *Cf. Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). This is its "nerve center." *See Id*. at 78.

26. At all times relevant herein, the following has been the case with regards to Defendant: (a) it has been a limited partnership with its principal place of business located in the State of Illinois, where its high-level officers and executives have directed, controlled, and coordinated Defendant's business operations, and (b) it is organized as a limited partnership under the laws of the State of Delaware. *See* Decl. Moore ¶ 9.

27. Therefore, Defendant is, and has been since the filing of this lawsuit, a citizen of the states of Illinois and Delaware. *See* 28 U.S.C. § 1332(d)(10); *cf. Hertz*, 559 U.S. at 78.

28. Further, Defendants Does 1 through 50, inclusive, are fictitious. The Complaint does not set forth the identity or status of any said fictitious defendants, nor does it set forth any charging allegation against any fictitious defendants. Pursuant to 28 U.S.C. § 1441(b)(1), the citizenship of defendants sued under fictitious names must be disregarded for the purpose of determining diversity jurisdiction and cannot destroy the diversity of citizenship between the parties of this action. *See Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998).

29. There are no named co-defendants in this action, and consent of co-defendants is not required for removal under the CAFA. *See* 28 U.S.C. § 1453(b); *United Steel, Paper & Forestry, Rubber Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 549 F.3d 1204, 1208-09 (9th Cir. 2008).

30. Based upon the foregoing, minimal diversity is established because at all relevant times, Plaintiff has been a citizen of California, and Defendant has been a citizen of Illinois and Delaware.

///

**C.  The Amount in Controversy Exceeds the Jurisdictional Minimum Under CAFA.**

31. This Court has original jurisdiction over the case under the CAFA, in that the case is a civil putative class action wherein the matter of controversy exceeds the sum of $5 million, exclusive of interests and costs. See 28 U.S.C. § 1332(d). Moreover, CAFA authorizes the removal of class actions in which the amount in controversy for all class members exceed $5,000,000. 28 U.S.C. § 1332(d)(2) ("The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.").

32. A defendant seeking to remove a case to federal court must file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).  The Supreme Court recognized that "as specified in §1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. 81 at 89.  A defendant's "amount-in-controversy allegation should be accepted" as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal-court jurisdiction. *Id.* at 87.

33.  While Defendant denies liability as to Plaintiff's claims, based upon the allegations contained in the Complaint, the amount in controversy in this action exceeds $5,000,000.  Plaintiff's Complaint alleges the total amount of monetary relief in controversy is "believed to be under the seventy-five thousand dollar ($75,000.00) jurisdictional threshold" and "believed to be under the five million dollar ($5,000,000.00) threshold". Decl. Okamoto, **Exh. A**, at ¶ 10.  However, because such a claim amounts to a baseless attempt by a class representative to limit the scope of relief available to the class in an effort to circumvent CAFA, such general declarations of the amount in controversy have no weight. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013).

34. Importantly, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and does not require evidentiary submissions. *Dart Cherokee*, 574 U.S. at 83-84; *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)..

35. Where a plaintiff alleges that a defendant has "adopted and maintained uniform policies, practices and procedures that caused the purported violations of California's [laws]…[i]t is not unreasonable to assume that when a company has unlawful policies and they are uniformly 'adopted and

maintained,' then the company may potentially violate the law in each and every situation where those policies are applied." *Mejia v. DHL Express (USA), Inc.*, No. CV 15-890-GHK JCx, 2015 WL 2452755, *4 (C.D. Cal. May 21, 2015). In that instance, "a 100% violation rate is not an unreasonable assumption to use in estimating the amount in controversy in light of the allegations in the complaint." *Id.* Here, Plaintiffs alleged that Defendants "implemented uniform policies and practices that deprived Plaintiff and Class Members of earned wages, including minimum wages; straight time wages; overtime wages; premium wages; lawful meal and/or rest breaks; reimbursement for necessary expenses; and timely payment of wages." Decl. Okamoto, **Exh. A** at ¶ 3. Further, Plaintiffs allege that "[s]uch actions and policies . . . were and continue to be in violation of the California Labor Code," among other things. *Id.*

36.  Based on the definition of "class" as set forth in Plaintiff's Complaint, there are at least 2,125 putative class members who were non-exempt, hourly employees and who collectively worked a total of approximately 10,000 shifts from May 24, 2018 to present, with approximately 205,664 combined pay periods from May 24, 2018 to present. *See* Decl. Moore, ¶¶ 4-5. Since May 24, 2018, approximately 2,125 employees have been separated from their employment with Angelica. *See id.* ¶ 7. Defendant's non-exempt hourly employees generally earned an average of approximately $15.40 per hour during the class period. *See id.* ¶ 6. However, the Company ceased operations on or about December 4, 2021. *See id.* ¶ 8. As such, there have been about 185 pay periods from May 24, 2018, through December 4, 2021. *See id.* ¶ 5.

### 1. *Minimum Wage*

37.  Defendant Plaintiff's First Causes of Action allege "Plaintiff and Class Members consistently worked hours for which they were not paid because Defendants frequently required Plaintiff and the Class Members to work off the clock." Decl. Okamoto, **Exh. A**, at ¶ 62. Complaint further alleges Defendant was "aware that Plaintiff and the Class Members were working off the clock and that they should have been paid for this time." *Id* at ¶ 63. Plaintiff's unpaid minimum wages claim is subject to a four-year limitations period under the UCL. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1401 (2010). Pursuant to California Labor Code Section 1194, an employee receiving less than minimum wage is entitled to recover the "unpaid balance of the full amount of this minimum wage or overtime compensation". Cal. Lab. Code § 1194.

38. For the purposes of calculating a legitimate amount in controversy, it can be assumed each employee worked five hours of straight time for which they were not paid per pay period. Pursuant to this assumption, the potential liability on Plaintiff's failure to pay minimum and straight time wages claim is $15,836,128.00 ($15.40 [straight time rate] x 5 hours per week x 205,664 workweeks) plus any statutory penalties pursuant to California Labor Code Section 1197.1.

### 2. *Overtime*

39. Plaintiff further alleges Defendant "failed to pay Plaintiff and the Class members earned overtime wages". Decl. Okamoto, **Exh. A**, at ¶ 74. As such, Plaintiff alleges he and the purported class "are entitled to recover from Defendants their unpaid overtime wages, reasonable attorneys' fees and costs in this action, and pre-judgement and post-judgement interest, statutory penalties, and liquidated damages." *Id.* at ¶ 76. Pursuant to California Labor Code section 510, an employee is entitled to one-and-a-half times their regular rate of pay for working more than 8 hours in a workday or more than 40 hours in a workweek. Cal. Lab. Code § 510.

40. Based on this, it would be reasonable to assume 1 hour of overtime per pay period was unpaid based on the Plaintiff's allegations. Pursuant to this conservative assumption, the potential liability on Plaintiff's instant claims would be approximately: $15.40 average hourly rate x 1.5 overtime rate x 205,664 collective pay periods = **$4,750,838.40**.

### 3. *Rest Periods*

41. Plaintiff's Fourth Cause of Action alleges that Defendant entirely failed to provide employees with uninterrupted rest periods and/or required its employees to remain on company premises in violation of California law. Decl. Okamoto, **Exh. A**, at ¶¶ 37-38, 92. Specifically, Plaintiff alleges the punitive class members were not provided with compliant rest periods because employees "were systematically not authorized and permitted to take one net ten-minute paid, rest period for every four hours worked or major fraction thereof". *Id.* ¶ 37. Further, Plaintiff alleges "Defendants did not pay Plaintiff one additional hour of pay at his regular rate off pay for each day that a rest period violation occurred." *Id.* ¶ 95. As such, Plaintiff contends to be "entitled to recovery of [premium wages], plus interest and penalties thereon, attorneys' fees, and costs". *Id.* ¶ 97.

///

42. Accordingly, using the same data as above, and assuming one applicable violation per work shift worked, potential liability at issue on Plaintiff's claim is approximately: 1-hour premium x $15.40 average hourly rate x 10,000 shifts = **$154,000**.

### 4. *Meal Periods*

43. Plaintiff further alleges Defendant "failed to provide Plaintiff and Class Members timely and uninterrupted first meal periods." Decl. Okamoto, **Exh. A**, at ¶ 79. Additionally, the Complaint provides "Class members were also not provided second meal periods on days when shifts exceeded ten hours (and twelve hours), nor were they provide premium wages in lieu of a second meal period." Decl. Okamoto, **Exh. A**, at ¶ 84. Plaintiff further alleges "Plaintiff and the Class Members were not paid one hour of pay at their regular rate for each day that a meal period was not lawfully provided." Decl. Okamoto, **Exh. A**, at ¶ 83.

44. If Plaintiff's meal period violation claim were considered, the potential liability for such claim would be similar, if not equal, to Plaintiff's rest period claim. Even if Defendant were to solely consider employees who were only entitled to a single meal period during their scheduled work shift (i.e., one meal period per scheduled shift), this claim would similarly equate to upwards of a potential liability in the amount of **$154,000** [1-hour premium x $15.40 average hourly rate x 10,000 shifts] assuming one applicable violation per work shift worked. *See* discussion, *supra*, Part IV.C.2.

### 5. *Waiting Time*

45. Plaintiff is seeking waiting time penalties under his Sixth Cause of Action for all employees hired to work in California from May 24, 2018, to judgment. *See* Complaint, ¶ 109. Further, Plaintiff alleges "Defendants failed to timely pay Plaintiff, and upon information and belief, other Class Members earned compensation at the time of termination". Decl. Okamoto, **Exh. A**, at ¶ 107. However, the instant claim has a three-year statute of limitations, making the cutoff date May 24, 2019. Under this claim, Plaintiff may claim penalties under California Labor Code Section 203, which permits a terminated employee to collect up to 30 days' wages if wages are not paid in full. Cal. Lab. Code § 203.

46. Between May 24, 2018, and the filing of the Complaint, 2,125 putative class members who have been employed by Angelica in a non-exempt, hourly position in the state of California have separated from the Company. *See* Decl. Moore ¶ 7. As such, at least the following amount is put at issue

by Plaintiff's waiting time penalties claim: $15.40 average hourly rate x 8 hours per day x 30 days x 2,125 individuals = **$7,854,000**.

### 6. *Inaccurate Wage Statements*

47. Plaintiff's Eighth Cause of Action for knowing and intention failure to comply with itemized employee wage statements provisions carries penalties in the amount of $50 for the initial pay period, plus $100 for each additional pay period, to a maximum of $4,000 per employee, with a one-year limitation period. Cal. Lab. Code § 226(e); Cal. Code Civ. Proc. § 340(a). As there are about 208 pay periods at issue during the statutory period, the current maximum exposure for any employee is $4,000, and thus all pay periods within the statutory period are properly included in the calculation. There are 205,664 combined pay periods at issue from May 24, 2018, to present. (*See* Decl. Moore, ¶ 5.) As there are about 988 individuals at issue [i.e., 205,664 combined pay periods ÷ 208 pay periods per individual = 988 individuals], 988 of the pay periods constitute an individual's first pay period within the statutory period and 48,512 subsequent pay periods.

48. As such, at least the following amount is put at issue by Plaintiff's wage statement claim: (988 x $50 initial pay period penalty) + (49,400 x $100 subsequent pay periods) = **$4,940,000**.

### 7. *Summary of Amount in Controversy*

49. Accordingly, the total amount in controversy on Plaintiff's claims is at least **$33,688,966.40**.

50. What is more, including an additional 25% for attorney fees is warranted in class actions. See *Jasso v. Money Mart Exp., Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *7 (N.D. Cal. Mar. 1, 2012); *see also Rodriguez v. Cleansource, Inc.*, No. 14-CV-0789-L DHB, 2014 WL 3818304, at *4 (S.D. Cal. Aug. 4, 2014). For purposes of considering fees for amount in controversy, the attorneys' fees are not limited to only those incurred prior to removal, but also what plaintiff may recover for violations after removal. *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 415 (9th Cir. 2018). This brings the total amount in controversy to, at least, $33,688,966.40 x 1.25 = **$42,111,208**.

51. By removing this matter, Defendant does not waive and, to the contrary, reserves, any rights it may have including, without limitation, all available arguments and defenses, including the right to move to compel Plaintiff's claims to arbitration. "The amount in controversy is simply an estimate of

the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

## V. CONCLUSION

52. Since minimum diversity exists, there are over 100 putative class members, and the amount in controversy exceeds $5,000,000.00, Defendant prays that this civil action be removed from the Superior Court of the State of California, County of Sacramento to the United States District Court of the Eastern District of California pursuant to the CAFA.

Dated:  August 15, 2022

FISHER & PHILLIPS LLP

By: */s/ William T. Okamoto*
Alden J. Parker
Christopher S. Alvarez
William T. Decl. Okamoto

Attorneys for Defendant
9W HALO WESTERN OPCO L.P.
dba ANGELICA ERRONEOUSLY SUED AS
9W HALO WESTERN OPCO, L.P.
dba ANGELICA TEXTILE SERVICES